This up this morning is 418-0487, Allen v. Solis and Solis v. Allen. For the appellant is Charles McBee. You are he, sir? And for the appellee is Miranda Susi. Okay, Mr. McBee, you may proceed. May it please the court, counsel for appellate police. My name is Charles McBee IV. Seated with me is attorney James Brocker. And we represent the appellants, Keith and Barbara Allen. We ask you to review the trial court's directive verdict finding and the final order in the case. Two issues in this case. The first being whether or not the Keith and Barbara Allen presented a crime of patient case for the adverse possession. Brief summary of the facts. The Swanson family back in 1992 conveyed property in Romanian County to the Keith and Barbara Allen in 1992. Same family, the Swansons, conveyed the property to the Solis family in 2009. Allens were on the east side. Solis is on the west side. The deeds do not have proper legal descriptions. The disputed property line between the two parties was created. Once again, Solis on the west, Allen on the east. In the center, there is a fence. The disputed property is on the east side of the fence line. Since 1992, the Allens have farmed the disputed property, satisfying the following five elements of adverse possession. Continuous, hostile, actual, open, notorious, exclusive possession, and under a claim of title inconsistent with that of the true owner. Specifically, continuous possession. The Allens testified back in the trial that since 1992, they purchased the property and continuously farmed it up to a boundary line, a fence and a tree line, without any disturbance through 2016. The Allens were personally on the property, operating machinery, along with their son. They actively monitored the crops throughout the years. This is the continuous possession. There's also hostile possession. Farming is an action, according to case law, that shows ownership of land above all other claims. A council's client did not exercise any control of the land until at least 2016. There was actual possession. Not only did the Allens farm up to the tree line, the trial court, Judge Goodwin, elicited testimony that the Allens actually trimmed the trees that were going into their cultivation line. They controlled the disputed property. There was open, notorious, and exclusive possession by the Allens. The claim of ownership by the Allens was open and not hidden from the world. Mr. Mockbee? Yes. I think the real nub of the case, from my viewpoint, stems from what occurred at the bench trial and whether or not there was an agreement reached. Before getting to that, because I don't want you to run out of time on that very important issue, in terms of what claims were presented, which counts were actually presented to the trial court in terms of the plaintiff's complaint, was count one withdrawn? Yes, Your Honor. During the court's final recitation going through, it was back and forth between different councils, but the count one was withdrawn, and the adverse possession was what was actually proceeded on in this case by the petitioners. Okay. And the trespass count was still viable, and the trial court entered a directed verdict on that as well as the adverse possession claim in favor of Mr. Solis. Is that right? Correct. All right. Then there's a recess, and the recess is prior to the case proceeding on the counterclaim. Is that right? Correct. Okay. So take us from there. Take us from the point of the directed verdict to the recess, and then what occurs when the parties go back on the record? What transpires at that point? The directed verdict finding concludes at that point, I think there was a request for a short break by the court, and at that point, counsel for the appellee suggested to counsel for the Allens that maybe we can work something out. At that point, there was a suggestion for $5,000 payment, and that would dismiss count three of their counterclaim, the slanted claim. That was discussed between the attorneys, and then that would have been discussed with the clients as well. And we have to be careful that what you're representing here today is supported by the record. So just understanding what occurred during the recess, we only have evidence of that through what was recited by the attorneys in open court as well as the affidavits that were filed in support of the motion for partial reconsideration. Is that right? Correct. Okay. And I'm not sure that you have said anything beyond what's contained in those, but please confine it to that. So in terms of what happened during the recess, the record supports that the Allens were present during these discussions? Yes. Okay. And there were representations made in open court when the court went back on the record that related to what the agreement was? Correct. Yes. What you were telling us was maybe what was contained in the affidavit. What was represented to the court by the attorneys? At that point, attorneys for Mr. Solis represented that the agreement had been reached. It would include $5,000. It would include that Mr. Solis would have superior title. It would be a confession of judgments, counts two and three of their claim. And the $5,000 would include attorney's fees, resetting of stakes, and it was inclusive. I believe that is a summary of the agreement that was put on the record at that point. The remaining counts of the counterclaim would be dismissed per the agreement? Yes, Your Honor. Okay. And the recitation of the agreement I think you already mentioned included a concession that Mr. Solis possessed superior title to the Allens. Is that right? Correct. Okay. And then there was an acknowledgment made by counsel for the Allens. Is that right? There was. Okay. And then the court repeated the terms of the agreement that had just been recited. Is that right? Correct. Yes. And again, subsequent to that, counsel for the Allens confirmed the terms of that agreement. Is that right? He did, yes. All right. Why is that not binding on the Allens? As part of that agreement, the court did ask that it be put in writing. And it was put in writing. And I think the record through the filings, you can see that soon after, as Your Honor mentioned, the motion for partial reconsideration was filed. And I think the record in those affidavits shows that the attorneys for the Allens did not hear or did not recognize that the agreement was not what they had agreed to in the intermission between the Direct Avert Binding and the agreement that was put on the record in the case. Why that is not binding? We're asking, telling you that there was no meeting of the minds. There was no consideration. Well, just on the consideration part of it, there were counts of the counterclaim that were dismissed. So isn't that consideration? I think what I'm suggesting is that that would not be enough consideration in this case. The situation would be, our point of view, is that really Mr. and Mrs. Allen got nothing out of that agreement. They lost superior title to the disputed property. They lose $5,000. And at that point, because superior title has been given to Mr. Solis, there's created a new gap to the east. So not only are they losing everything that they've been fighting for, but they've got a new situation to the east where a new gap has been completed. And so they've got a new issue there as well, because their property was shipped to the east. And I interrupted you. You were explaining why this was not an enforceable settlement agreement. It's not enforceable because if there's an objection to the terms of the agreement, there is no agreement. Beyond the agreement that was put in court, on the record, the court also asked that the agreement be put in writing. Is that required to make it effective? I don't believe it's required, but the court did request it. And actually, we went to court on our motions, and the order was entered over objection. When did you first raise to the court the claim that the settlement wasn't accurate? In the motion for partial reconsideration. When was that? That was filed on May 4th of 2018. How long after the trial was that? It was less than 30 days. How long? What was it less than? The trial was on June 19th of 2018. I believe it was weeks, Your Honor. It was what? I believe it was weeks, Your Honor. Weeks? Yes. When a settlement was stated in open court, settlements are binding. A judge might say, okay, put it in writing so it's clear what it was as opposed to having to get a transcript. But that seems to me to be no different than when the trial court makes a ruling and directs someone to put that in writing as well. And the question is, does the writing accurately reflect what the judge said? It's not a chance to relitigate the judge's ruling. Isn't that correct? Normally, that would be the situation, Your Honor. I would agree, yes. Well, in excusable neglect, I don't understand where this concept comes from. It seems to me it's a dangerous one on top of it. Why shouldn't parties be able to rely upon what was represented by the lawyers for a settlement of a civil case when the judge in this case made clear that the lawyers understood the terms and that's what they wanted to agree to, and they said yes. Excusable neglect is something that comes from the federal jurisdiction. In this case, what we're saying is, yes, it was neglectful for the attorneys not to know what was going on and not to object to the agreement that was recited. But we're saying it was a situation where it wasn't done on purpose. And I understand the court... So the Supreme Court of Illinois and its rules and the legislature and the Code of Civil Procedure forgot to include excusable neglect as a means to challenge a settlement in open court like this one? I'm not suggesting the Supreme Court forgot to include that. Well, why should we recite federal rules? We're not a federal court. Mark Goodwin, to the extent that federal rules might permit it, how does that support your case here? I think it's in your discretion to use that source in this case. Certainly, it's not something that is used in Illinois, but it's not something that I see that cannot be used. Well, Judge Goodwin had the discretion, if he thought there was merit to any of this, to grant the relief he requested instead of decide. Why did he not? He certainly could have because there was a motion hearing set and I think there was brief argument. What did he say in declining to do so? I think his ruling was that the agreement with what Your Honor is saying, the agreement was put on the record and that's it. That's where we're at. In your rebuttal, your reply brief, you say the settlement agreement is not blind-binding because it was procured as a result of intentional misconduct and fraudulent conduct on the part of Solis' attorneys. Would you identify what that conduct was for me? The suggestion there is that I don't want to go off the record. Well, I'm quoting from your reply brief, so I'm assuming there's something in the record which will support it. Well, our affidavits suggest that the agreement that was discussed during the intermission between the director of the finding and the recitation on the record was not the same. So that is what we're suggesting is the fraud. So that's intentional misconduct and fraudulent conduct on their part? That they got up and up in court and stated their understanding of the settlement? We are suggesting it was intentional, yes. One other thing. Procedurally, I'm just not sure. If we were to agree that the settlement agreement was binding, then what's left of this case with regard to your argument on the trial court's erroneous entry of a directed finding? If the settlement agreement is binding, doesn't that take care of everything so that the first issue discussed is mooted? I would tend to agree with that, Your Honor, yes. Going back to something Justice Feigman was asking about that relates to this concept of excusable neglect. You asserted, the Allens asserted, excuse me, in the motion to reconsider that this was a mistake, affidavits were attached. I was interested in what the trial court said about this issue at the hearing on the motion to reconsider, but I didn't see a transcript of the hearing. Was there an actual hearing, and where's the transcript of that? There was. I believe what happened in that situation was that it was set for a hearing, and briefly the judge did make some argument. If there was a hearing, there should have been a transcript of that. I'm not sure why that wouldn't have been in the record. I know at some point the court did sign an order in this case over objection. Certainly that wasn't signed in court, that would have been signed in the court's chambers, but I'm not sure why there wouldn't be a transcript of a hearing that occurred in the case. Can you tell me whether there is or isn't? Because I couldn't find it, that's why I'm bringing it up. It would be interesting to know what the trial court said about your assertions, the Allens assertions, that there was fraud, that this was entered into by mistake and so forth as contained in the motion to reconsider. I cannot tell you whether there is a transcript, but I believe there should be. So your honor, justices of the court, we are asking the court to reverse and remand this case for the two reasons that I've stated. We're asking the court to find that the agreement that was put on the record is void. We're asking the court to also, with regard to the directive verdict, find that a premonition case was given, that the elements of adverse possession are found, and I thank you for your time. One last question, and then I'll be brief. In spite of counter-plaintiffs' complaint of your brief to this court, arguing that it fails to meet the requirements of Rules 341, you write that the common law record is comprised of three volumes and over 400 pages, and that you're asking this court to review and direct the verdict entered during a bench trial that spanned two days, but your statement of facts section of your brief has only four citations to the record. What about that? In our response to that, our position was that we're not aware of a minimum, and we believe that, as far as the citations, we believe that the citations, the amount that we included were sufficient in this case, and meet the requirements as far as the Supreme Court. Okay. Thank you. Ms. Susi? May it please the Court? Counsel. Counsel. The determination of this appeal really comes down to one sentence. In the words of Mr. Brocker, we would confirm on the Allens' behalf that this is an accurate order. They were present, and we discussed this with them. It's those words that require that this appeal be dismissed due to that underlying settlement agreement, and that sanctions be entered against the plaintiffs in this case. Why dismissed instead of affirmed? Generally speaking, under the law, when we're reviewing settlement agreements, the settlement agreements, because they are binding on the parties, they're not appealable. As such, this appeal should not even exist on its face. It's for that reason that I believe the appropriate thing to do is to dismiss the appeal, because there's really nothing to affirm at this point, other than to uphold the agreement that the parties came to. Well, the Court denied the motion for partial reconsideration, and that's what's being appealed, so that would be the action of this Court, would be to affirm. Correct. So we would ask that that happen, and then that sanctions be entered against the plaintiffs for a frivolous appeal in this situation. Well, that's an interesting question. You heard my questions, Mr. Rockbee, and there is no basis in Illinois law for the excusable neglect concept. Does it exist in federal law? It doesn't exist in federal law, although I'm not sure that it exists to the extent that counsel would like it to. Well, I suppose, here's the question on the 375. As you know, it's a pretty high threshold to impose sanctions. Could a lawyer in good faith make a colorable argument that even though Illinois law currently doesn't provide for the excusable neglect exception that he is arguing in this case, that the trial court and this court on appeal could conceivably apply it nonetheless and say within the, I think, what is it, emanations from the penumbra of Supreme Court rules, exists authority for this court to read it into the law and to adopt it. I don't think that there is a reasonable basis for that, and the reason I believe that is in the face of the civil procedure rules and the Illinois Supreme Court rules and all of the case law that talks about this, there's never been an instance where that has been applied and the courts have prevented it. And there's a reason why. And that reason is sort of what your self-justice got to earlier, which is there's a slippery slope. When people enter into a settlement agreement, whether that be because there was an erroneous ruling, a ruling they didn't like, a bad deposition, or a verdict in front of a jury, that is a binding settlement. And to open up the door to allow people to come to this very court and ask that those settlements be overturned is going to lead to a whole host of people with regrets after entering into settlement agreements, coming here, trying to overturn settlements. And what happened in this case by Mr. Mockfee's own admission earlier was that counsel, on behalf of the plaintiffs, had a miscommunication with their client, and then got into court and didn't listen to what the agreement was, and instead of asking for it to be repeated, or saying, I'm not sure that was our agreement, or saying this was fraud, or saying there was a mistake, no, he said we would confirm on behalf of the Allens that that is the accurate ruling. Did you say that you were reciting or recounting what was just said by counsel in the original argument here today? Is that contained in the record, that there was, would you say, miscommunication between client and counsel? I don't believe so, and I think the quote from earlier was that counsel did not hear and did not recognize that the order was not consistent with what was conveyed to the client. But this explanation that you were just referring to about why there was maybe a client and attorney not being on the same page in that, is any of that in the record? There's absolutely nothing in the record. And one other item. Is there a transcript of the hearing on the motion for partial reconsideration? I have never seen a transcript of the hearing. The only thing in the record that we can really rely on in this instance is first the April 19th, 2018 oral record where Mr. Spiros recited the agreement, Mr. Brockert confirms the agreement, and then the court reiterated the agreement. And so to go back to the excusable neglect situation, even if there was a good basis for arguing that that should be what the law in Illinois is, the issue in this particular case is there's absolutely nothing in the record that supports that argument from a factual standpoint. If you read the record from 4-19-18 and then the subsequent order entered by the court, there's nothing to support anywhere that there was some sort of mistaken agreement or fraud or anything like that. The second part of that is the first time that fraud was even alleged in this case was in the reply brief. So to go back to Supreme Court rule violations, we now have a violation of 341-H7. That argument was waived by the plaintiffs. They cannot now come in the reply brief and suddenly allege fraud when they didn't allege it at any other point in time. There were a couple other questions. Let me follow up on the question I asked Mr. Mockney. It seems to me, going back to the time I was a trial judge, I was a trial judge for over 12 years and had some experience with this kind of settlement discussions and being told the case is over. Always welcome news from the judge's point of view. But it seems to me that the circumstances of this case don't quite fit. That is, Mr. What's his name? Brocker? Is that how it's pronounced? Brocker, I believe. Brocker. Brocker? Is there with Mr. Spiros and Mr. Duca on our behalf. They're all together. They just made this representation. Case is settled. Mr. Brocker walks out and as you know, his clients were not in the courtroom for whatever reason, but apparently right outside. And he'd walk out and say, case is over, it's off and settled. Because, after all, this was just a recess as far as they would know. Case is over, it's off and settled. And then the discussion, it seems to me, would have had to have been what happened? What's the How did it all resolve? After all, from the point of view of the Ellens, this is pretty important stuff. And Mr. Brocker would have told them, well, this is what was settled. And it seems to me this would be a rather different case if within 10 minutes or 15 minutes, he had returned to the courtroom, caught Mr. Spiros and said, wait a minute, I misunderstood. I misunderstood what you were saying and what I had communicated to my clients, and they didn't agree to that. That's not what they wanted to do. Instead, as I asked Mr. Mockbee, weeks went by, which strikes me as an inconsistent posture with the claim that, wait a minute, this representation you made of the settlement up in court wasn't accurate. I don't think you are. And I think that's why I go back to the excusable neglect and why sanctions are appropriate here, because not only was the recitation of the agreement made by Mr. Spiros once confirmed by Mr. Brocker once, it was then repeated and reconfirmed by Mr. Brocker. And to then come back a couple weeks later and say, oh, I was mistaken in my understanding of what that agreement is, is incredible at this point. And the fact that we are being subjected to this agreement, which, to go back to your question about consideration earlier, the consideration here was that the litigation was pending. Yeah, well, somebody in the lawsuit claims of no consideration. Right. I don't think you need to address that. The unfortunate thing from the sanctions standpoint, though, is that consideration was for both parties, and we are now here after undergoing weeks of going through the record, which is fairly lengthy. There's no transcript for the hearing, but I'm wondering, did Judge Goodwin raise the question of why is it three weeks or however many weeks afterwards that you're raising this mistaken understanding for the first time? I was not present at that hearing, so I'm not going to try to make an assertion of that at this time. Junker? Do you agree that Charles Ford recited the terms of the agreement on the record, but then specifically stated that he wanted an order which would reflect what he had stated on the record? Yes, Your Honor. Well, why wouldn't that, when the order then is presented, why wouldn't that give both sides an opportunity to argue the court, well, the order as written doesn't comply with what the agreement was? I think certainly you can make that argument at that point in time, but when you go back to the transcript when it was recited on two separate occasions, the order clearly reflected exactly what was recited and what was agreed upon by Mr. Brocker. Was there an ultimate ruling? And what I'm getting at here is the court made a ruling that the agreement was as the transcript reflected. Correct. And what would then be our standard of review as to the court making that finding? Manifest weight? It would be manifest weight, yes, I believe. And so you would have to take the facts as they are in the record in the light most favorable to the prevailing body, which I would argue is my client, and you'd have to find that something clearly disputes with that. And at this point, Well, we'd have to find the opposite conclusion as clearly apparent. Clearly apparent, correct. And the record is so clear as to what the terms of this agreement was that I don't see how you can find anything in the record of entering that order and then denying their motion for partial reconsideration be affirmed. And we would ask that sanctions be entered because there is no good faith basis based upon the record in this particular case for extending an excusable neglect standard. Well, what kind of sanctions? We would ask for our attorneys' fees in having to prevail through this appeal. There are no other questions. Again, we would ask that the trial court be affirmed and that sanctions be entered pursuant to 375. Thank you, counsel. Mr. Mockbee, any rebuttal, sir? Okay. Your Honor, we are asking the court not to impose sanctions in this case, specifically with regard to the excusable neglect argument. We believe there is a reasonable basis for that argument. Federal law, certainly, this is not federal, to give guidance in this situation. We also... Mr. Mockbee, I want to ask you about the same question I asked Ms. Susi in the scenario I envisioned. It's hard for me to understand how, with the claims right outside, Mr. Brocker walking out and saying this case is over, that the conversation wouldn't have occurred about this will tell us all about the circumstances and how did it end and what's still going on or how was it resolved and had that occurred, which it seems to me, as I say, I hardly believe it didn't. Why did weeks pass before the matter was called to the court's attention and the mistake had been made? It seems to me this would be an entirely different case if the representations of the mistake had been made occurred within 10 minutes instead of three weeks. I want to stick to the record on that. The court did ask the attorneys to prepare in order this case and the motion for partial reconsideration was filed by Mr. Brocker on May 4th of 2018 which was weeks after the trial. But in that particular motion, Mr. Brocker kind of sets forth a timeline that he signed off on. He said in paragraph 8, it was not until after the hearing and review of the respondent's proposed order and review of the docket that petitioner's counsel realized that the statement and confession and what the I'm not going to recite the whole agreement but he says that that agreement was not what was agreed to. So if Mr. Brocker's motion for partial reconsideration kind of sets forth the timeline and why things happened the way they did as far as that. So that's why I would suggest to you the timeline based on the record, the documents. Well, again, this would be a different situation if it was just a matter of the lawyers being present and he had to go back to his office and communicate the arrangement and settlement to the Allens. But they were right outside. We know that because he said so on the record to the judge. Correct. So there was no I mean, what I have to then believe is he went outside, case is over, no discussion about the terms and everyone just went home. Well, and why I disagree with what you're saying that they would have went outside and maybe they didn't agree with what happened because Judge Goodwin during the recitation of the agreement actually asked Mr. Brocker, did you speak with your clients about this? And he said yes. So I disagree with the court that they would be surprised afterwards because Mr. Brocker put on the record that they had already agreed to it. Okay. So finally, I want to say in our brief, we did allege fraud early on. It's there wasn't a section as far as fraud but we did cite the McCracken case 122 Hillop 360 likewise as and within any contract an agreement occurred through mistake or fraud is invalid so we would suggest that the reply brief was not the first time we brought up fraud. Isn't it bad form for you folks to be arguing fraud based upon nothing more than the representation by Mr. Spiros of what the agreement was when you're arguing in response of gee we're in good faith asking to stretch Illinois law for excusable neglect in response to their 375 argument? We are asking the court to look at that along with contract law and fraud as reasons why the court should not upheld uphold the order that was entered over objection. Yes we are. We're asking the court to deny the motion for sanctions we're asking the court to reverse and remand this case based on all of that. Thank you counsel. Court is adjourned.